(C. D. 745)

## T. C. Carlin Co. *v.* United States

### United States Customs Court, First Division

(Decided March 10, 1943)

*Henry L. Ziegel* for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Robert C. O'Grady,* special attorney), for the defendant.

Before Oliver, Walker, and Cole, Judges

WALKER, Judge: This case was submitted for decision upon a stipulation of counsel reading, so far as pertinent, as follows:

It is hereby stipulated and agreed, by and between counsel for the plaintiff and the Assistant Attorney General for the United States, as follows:

The merchandise in issue consists of finished leather cattle sides (grains) of a character known as side upper leather and used wholly or chiefly in the manufacture of shoe uppers, vamps, or other forms or shapes suitable for conversion into boots, shoes, or footwear

The bales containing these sides include sides which measure more than 14¾ square feet each, as well as sides which measure less than 14¾ square feet each, the average measurement of all sides in each bale being under 14¾ square feet.

\* \* \* \* \* \* \*

The merchandise was assessed with duty at the rate of 15 per centum ad valorem under the provisions of paragraph 1530 (b) (4)

which, prior to amendment or modification by the British Trade Agreement, T. D. 49753, read as follows:

Par. 1530. * * *.

(b) Leather (except leather provided for in subparagraph (d) of this paragraph), made from hides or skins of cattle of the bovine species:

* * * * * * *

(4) side upper leather (including grains and splits), patent leather, and leather made from calf or kip skins, rough, partly finished, or finished, or cut or wholly or partly manufactured into uppers, vamps, or any forms or shapes suitable for conversion into boots, shoes, or footwear, 15 per centum ad valorem;

As indicated above, this provision was amended or modified by the British Trade Agreement referred to, to read as follows:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 1530 (b) | Leather (except leather provided for in subparagraph (d) of paragraph 1530, Tariff Act of 1930), made from hides or skins of cattle of the bovine species: <br> * * * * * <br> (4) side upper leather (including grains and splits), and lining leather made from calf or kip skins, rough, partly finished, or finished, or cut or wholly or partly manufactured into uppers, vamps, or any forms or shapes suitable for conversion into boots, shoes, or footwear (not including patent leather of [or?] calf or kip leather other than lining leather): <br> Side upper splits, wax or rough, not cut or wholly or partly manufactured into uppers, vamps, or any forms or shapes suitable for conversion into boots, shoes, or footwear <br> Other | 10% ad val. <br> 12½% ad val. |

It appears that the collector classified the merchandise in issue as "leather made from * * * kip skins" other than lining leather, which is excluded from the provisions of the trade agreement, and took duty thereon at the rate of 15 per centum ad valorem. Plaintiff claims that the merchandise is entitled to classification as "side upper leather" dutiable at only 12½ per centum under the provisions of the paragraph as amended by the trade agreement.

In support of its claim it is argued in the briefs filed in plaintiff's behalf that (1) there is no "statutory authority for setting up a so-called norm of 14¾ square feet as a dividing line between cattle sides and kip sides," and (2), at any rate, the provision for "side upper leather" is superior to the provision for "leather made from * * * kip skins."

We think as to point (1) that if the plaintiff desired to dispute the finding of the collector that the merchandise at bar was made from kipskins it was incumbent upon it to offer evidence bearing upon that fact. The mere statement in the stipulation that the sides (meaning by that term, apparently, one-half of a skin) in question measure on an average less than 14¾ square feet, without further evidence, does not in any way assist the court in determining whether the leather at bar was or was not made from kipskins. If recourse is had to the com-

mon meaning of the term it appears that it relates to the skin of an animal of the bovine species in size between a calf and a cow, including both animals older than calves but younger than cows and the adults of small breeds of cattle. If the leather in the case at bar was made from skins other than that of such animals, it was plaintiff's burden to establish that fact, and since it has not done so, we must hold for the purposes of this case that the leather in issue was made from kipskins.

The merchandise at bar is, therefore, for tariff purposes within the scope of the term "leather made from * * * kipskins," and it is also, by the language of the stipulation, "side upper leather," which is mentioned in both the paragraph as originally enacted and as modified by the trade agreement.

Counsel for both sides have referred to the "Digests of Trade Data" issued by the United States Tariff Commission concerning the trade agreement between the United States and the United Kingdom (1938). We have carefully examined the material therein contained with reference to the articles covered by paragraph 1530 (b) (4) affected by the trade agreement and fail to find anything which could be considered as tending to show the intent of the parties to the agreement in the matter of side upper leather which had been made from kipskins. We have likewise examined the Summary of Tariff Information, 1929, and the Hearings before the Ways and Means Committee of the House, 1929, and fail to find anything of value therein bearing upon the subject.

Counsel for the plaintiff invokes the well-settled rule of construction of tariff statutes that a classification by use prevails over a general classification in the absence of clear legislative intent to the contrary, and points out that the term "side upper leather" is a classification by use, while the provision for "leather made from * * * kip skins" is a description of composition or general character.

We think, however, that an examination of the provision as contained in the trade agreement shows an intent of the parties thereto to exclude from the benefits of such agreement leather made from kipskins. Only two articles are covered under subdivision (b) (4) of the provision relating to paragraph 1530, viz, side upper leather and lining leather made from calf or kipskins. Both of these provisions are modified by the language which follows their enumeration— "rough, partly finished, or finished, or cut or wholly or partly manufactured into uppers, vamps, or any forms or shapes suitable for conversion into boots, shoes, or footwear"—and both are equally modified by the provision in parenthesis immediately following— "(not including patent leather of [or?] *calf or kip leather other than lining leather*)." [Italics mine.]

If it be claimed that the italicized words refer or relate only to the provision for "lining leather made from calf or kip skins," that construction would imply the use of unnecessary language, for the pro-

vision would then be for "lining leather made from calf or kip skins * * * (not including * * * calf or kip leather other than lining leather)." Such a construction is, of course, to be avoided, and in order to give effect to the words used they must refer not only to the provision for lining leather but also to the provision for side upper leather.

The protest is therefore overruled, and judgment will issue accordingly.